**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**Securities and Exchange Commission,**

Plaintiff,

**v.**

**Eldrick E. Woodley d/b/a Woodley & Co. Wealth Strategies,**

Defendant.

**Case No: 4:15-CV-2767**

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "Commission"), files this Complaint against Defendant Eldrick E. Woodley, doing business as Woodley & Co. Wealth Strategies ("Woodley"), and alleges:

## SUMMARY

1. For more than two years, investment adviser Woodley perpetuated a fraudulent scheme to misappropriate money from his clients. Between May 2012 and June 2014, Woodley submitted a series of invoices to his custodian ("Custodian") to collect funds from client accounts as compensation purportedly for services performed or investments made on their behalf. However, Woodley was simply misappropriating money from his clients. The invoices Woodley submitted were for services that he never performed, items and expenses his clients never agreed to pay for, and purported investments for clients that were never made. Woodley directed all of these transactions and fraudulently collected more than $147,000 from his clients' accounts.

2. By engaging in these transactions, Woodley violated the anti-fraud provisions of the Investment Advisers Act of 1940 (the "Advisers Act"). The Commission seeks an order

enjoining Woodley from future violations of those provisions, directing him to disgorge ill-gotten gains with prejudgment interest thereon, and ordering him to pay civil monetary penalties.

## JURISDICTION AND VENUE

3. The Commission seeks a permanent injunction, disgorgement, and the imposition of civil penalties pursuant to Section 209 of the Advisers Act [15 U.S.C. § 80b-9].

4. This Court has jurisdiction over this action pursuant to Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14].

5. Defendant has, directly or indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, transactions, practices, and courses of business described in this Complaint.

6. Venue is appropriate in this district under Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because Woodley resides in, and a substantial portion of the conduct alleged in this complaint occurred within, the Southern District of Texas.

## PARTIES

7. **Eldrick E. Woodley,** doing business as Woodley & Co. Wealth Strategies, age 33, lives in the Houston area and based his business in Houston, Texas. Woodley was registered as an investment advisor with the state of Texas from December 2010 through December 2012. At all relevant times, Woodley conducted his investment advisory business under the name Woodley & Co. Wealth Strategies, an unincorporated sole proprietorship.

## FACTUAL ALLEGATIONS

### A. Woodley's Investment Advisory Business

8.  Woodley started his investment advisory business in or before November 2010 under the name Woodley & Co. Wealth Strategies to provide investment advisory services to individual clients. During the relevant period, Woodley had a total of sixteen clients, primarily located in the Houston area.

9.  New clients reviewed and executed a "Woodley & Co Wealth Strategies Investment Advisory Agreement" (the "Advisory Agreement") upon the client's selection of Woodley as an adviser. The terms of the Advisory Agreement provided that Woodley would act as the client's adviser and manage the client's investment portfolio in exchange for an annual advisory fee based on the client's assets. Clients would pay a portion of the annual advisory fee each quarter. The Advisory Agreement, however, contained no provisions stating that Woodley's clients were responsible for paying expenses relating to Woodley's travel, lodging, or meals, or for paying for Woodley to attend any retreats or seminars.

10. In March 2011, Woodley and Custodian entered into an agreement for Custodian to provide Woodley with advisory custodial services. As part of that contract, once a client's assets were deposited into Custodian's custodial accounts, Custodian would withdraw advisory fees from accounts and transfer them to the adviser at specified times. Custodian account holders received their account statements directly from Custodian on a quarterly basis. Woodley's clients' quarterly statements from Custodian specifically reflected every withdrawal for annual advisory fees and included a description of how that quarter's fees were calculated.

11. Custodian also provided investment advisers, including Woodley, with a mechanism to recover fees, in addition to their annual advisory fees, for additional items and

services the adviser provided to clients. Advisers could submit an Invoice Fee Form for Investment Advisor's Fee (a "Fee Invoice") to Custodian to collect fees from a client's account. The typical Fee Invoice required the adviser to provide its contact information, select a fee description,[1] describe what the fee was for, and provide the amount of the fee being charged to a specific client account. An adviser could use one Fee Invoice to collect fees from multiple client accounts.

12. Once Custodian processed a Fee Invoice, it withdrew the fee requested from the applicable client account and deposited the funds into the adviser's pre-specified account. Every fee withdrawn from a client's account via a Fee Invoice was reflected on the client's quarterly statement. However, the descriptions of those fees in clients' quarterly statement were very general, and did not include explanatory information similar to that contained on the Fee Invoices. Other than including one of the aforementioned fee descriptions, the clients' quarterly statements provided no information about these fees — there was no indication as to what they were, why they were being assessed, or even who received the fees deducted from a client's account. Additionally, as Woodley knew or was reckless in not knowing, Custodian did not, as a matter of course, send a copy of a Fee Invoice to the client being charged the additional fee.

## B. Woodley Devises a Fraudulent Scheme to Misappropriate Client Assets

13. In May 2012, Woodley embarked on a fraudulent scheme to steal money from his clients. Woodley began submitting Fee Invoices to Custodian to collect fees for services that he never performed, items and expenses his clients never agreed to pay for, and purported investments for clients that were never made. The fraudulent Fee Invoices, and resulting

[1] The choices available were Management Fee, Financial Planning Services, Investment Management Fee, Asset Management Services, and Investment Advisory Services.

payments, are detailed below in paragraph 14. The following are just a few examples of the fraudulent Fee Invoices Woodley submitted to Custodian:

a. February 21, 2013: $6,000 Fee Invoice for Financial Planning Services. Woodley described the fees on this Fee Invoice as relating to "Estate Planning Fees and Family Consultation" and sought to collect these fees from five clients. Woodley, however, never performed any estate planning or family consultation for any of these clients. Custodian paid the $6000 to Woodley on February 25, 2013.

b. March 14, 2013: $3,640 Fee Invoice for Management Fees. Woodley described these as management fees for a private equity investment and sought to collect them from five clients. However, Woodley should not have charged these clients "management fees" because: (1) three of the five clients never invested in the private equity deal; (2) the two clients that did invest in the deal did so outside of their relationship with Woodley and Custodian; and (3) Woodley never disclosed to the two clients that did invest in the deal the existence of management fees related to the venture, and they never agreed to pay any such fees to Woodley. Custodian paid the $3,640 to Woodley on March 20, 2013.

c. April 15, 2013: $6,366.10 Fee Invoice for Financial Planning Services. Woodley described the fees on this Fee Invoice as "Tax Retreat (Austin, TX) planning fees based on assets and time spent on case," and sought to collect them from five clients. However, none of these clients knew about this retreat or its purpose, and none of them ever agreed to pay Woodley's expenses to take this or any other trip or retreat. Custodian paid the requested $6,366.10 to Woodley on April 19, 2013.

14. Between May 2012 and June 2014, Woodley sent Custodian the following Fee Invoices, which Custodian then processed and paid:

| **Invoice Date** | **Fee Description** | **Fee Collected** |
|---|---|---|
| 5/29/2012 | Investment Advisory Fee | $4,142.54 |
| 6/12/2012 | Financial Planning Services | $3,400.00 |
| 7/10/2012 | Investment Advisory Fee | $1,750.00 |
| 7/30/2012 | Financial Planning Services | $4,050.00 |
| 8/21/2012 | Investment Management Fee | $5,010.00 |
| 10/2/2012 | Investment Management Fee | $1,475.00 |
| 11/12/2012 | Investment Management Fee | $1,550.00 |
| 11/23/2012 | Asset Management Services | $3,025.00 |
| 12/8/2012 | Financial Planning Services | $1,625.00 |
| 12/14/2012 | Management Fee | $4,900.00 |
| 1/21/2013 | Financial Planning Services | $1,125.00 |
| 1/25/2013 | Financial Planning Services | $3,900.00 |
| 2/21/2013 | Financial Planning Services | $6,000.00 |
| 3/14/2013 | Management Fee | $3,640.00 |
| 4/15/2013 | Financial Planning Services | $6,366.60 |
| 5/10/2013 | Management Fee | $2,979.00 |
| 5/20/2013 | Investment Advisory Fee | $3,000.00 |
| 6/12/2013 | Financial Planning Services | $2,110.00 |
| 6/24/2013 | Financial Planning Services | $3,356.25 |
| 7/22/2013 | Financial Planning Services | $6,694.00 |

| | | |
|---|---|---|
| 8/15/2013 | Financial Planning Services | $3,585.00 |
| 8/28/2013 | Management Fee | $9,070.00 |
| 9/16/2013 | Management Fee | $4,500.00 |
| 9/27/2013 | Financial Planning Services | $6,665.00 |
| 10/17/2013 | Management Fee | $4,500.00 |
| 10/28/2013 | Management Fee | $7,250.00 |
| 11/25/2013 | Management Fee | $9,275.00 |
| 12/23/2013 | Management Fee | $5,220.00 |
| 1/22/2014 | Management Fee | $1,945.00 |
| 2/10/2014 | Management Fee | $4,100.00 |
| 3/6/2014 | Management Fee | $3,130.00 |
| 3/24/2014 | Asset Management Services | $5,235.00 |
| 4/21/2014 | Management Fee | $8,225.00 |
| 5/20/2014 | Management Fee | $4,225.00 |

As Woodley knew or was reckless in not knowing, each of these Fee Invoices falsely contained descriptions of work Woodley never performed, items that Woodley's clients never agreed to pay for, or investments that Woodley never made for his clients. And, as he knew it would, Custodian withdrew these requested fees from Woodley's clients' accounts and transferred all withdrawn fees to bank accounts held in the name of Woodley individually, Woodley & Co. Wealth Strategies, or Woodley doing business as Woodley & Co. Wealth Strategies. Woodley collected at least $147,023.39 in fees from eleven clients through the materially false and misleading Fee Invoices specified above.

## C. Woodley Misleads a Client Who Discovered his Fraudulent Conduct

15. One of Woodley's clients (Client 1) eventually discovered that Woodley had fraudulently collected fees from her account. In or around November 2013, Client 1 received a quarterly statement and became concerned with the amount of fees taken out of her account for the year to date. At or near that same time, Client 1 contacted both Woodley and Custodian for an explanation. Woodley concocted a false story to hide his conduct and told Client 1 that she had been mistakenly charged these fees. Woodley claimed that some of his clients had invested in certain hedge funds, that he had given specific fee instructions for those accounts, and that Client 1's account had been mistakenly included within the instructions given for these accounts. Woodley falsely told Client 1 that he had started the paperwork with Custodian to reverse the charges. In fact, as Custodian informed Client 1, all fees deducted from her account were consistent with instructions Custodian received from Woodley. Woodley knew this or was severely reckless in not knowing, as evidenced by the fact that he never — contrary to his assurances to Client 1 — actually tried to return Client 1's money.

16. Between November 2013 and January 2014, Client 1 and Woodley continued to communicate about the fees charged to her account. In January 2014, Client 1 told Woodley she had contacted Custodian about the fee issue and was told that Custodian had received no instructions from Woodley regarding restoring the fees to her account. Woodley responded by telling Client 1 that he had instructed Custodian to stop all withdrawals from Client 1's account and that it would take two business weeks to return the funds withdrawn from Client 1's account along with any growth calculations. This representation was also untrue. Woodley never instructed Custodian to stop withdrawing fees from Client 1's account and had taken no action to try to restore the fees withdrawn from Client 1's account.

17.     In or around early May 2014, Client 1 again contacted Custodian to complain about the fees withdrawn from her account.  Custodian responded by sending Client 1 copies of the Fee Invoices Woodley had submitted relating to her account.  Client 1 had never seen, and had no knowledge of, these Fee Invoices prior to this time.  After receiving the Fee Invoices, Client 1's spouse contacted Woodley and told him that Client 1 suspected fraudulent activity by Woodley and threatened to take legal action unless Woodley returned the full amount fees withdrawn from Client 1's account, along with any gains or losses.  In response, Woodley stopped all communication with Client 1.  To date, Woodley has not restored any of the fees fraudulently withdrawn from Client 1's account, or any other client's account.

## CLAIMS FOR RELIEF

### Violations of Sections 206(1) and (2) of the Advisers Act

18.     The Commission realleges and incorporates the foregoing paragraphs as if fully set forth herein.

19.     At all relevant times, Woodley operated as an "investment adviser" as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. 80b-2(a)(11)].

20.     By engaging in the acts and conduct alleged above, Woodley, while acting as an investment adviser, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, knowingly, willfully, or recklessly (a) employed a device, scheme, or artifice to defraud clients or prospective clients; and (b) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon clients or prospective clients.

21.     By reason of the foregoing, Woodley violated, and unless enjoined will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDRED, the Commission respectfully requests that this Court:

a. Permanently enjoin Woodley from directly or indirectly violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)];

b. Order Woodley to disgorge any wrongfully obtained benefits, including prejudgment interest thereon;

c. Order Woodley to pay civil penalties pursuant to Section 209 of the Advisers Act [15 U.S.C. § 80b-9]; and

d. Grant the Commission such other and further relief, at law or in equity, to which it may show itself justly entitled.

DATED: September 22, 2015

Respectfully submitted,

*s/ David B. Reece*

David B. Reece
Attorney-in-Charge
Texas Bar No. 24002810
SD Bar No. 896560
U. S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas 76102-6882
Tel: (817) 978-6476
Fax: (817) 978-4927
*Reeced@sec.gov*

ATTORNEY FOR PLAINTIFF