United States District Court
Southern District of Texas
**ENTERED**
July 05, 2018
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-2767 |
| § | |
| **ELDRICK E. WOODLEY,** § § | |
| Defendant. § | |

## MEMORANDUM & ORDER

Pending before the Court is the Motion for Final Judgment by Default filed by Plaintiff Securities and Exchange Commission against Defendant Eldrick E. Woodley. (Doc. No. 11.) Based on careful consideration of the filings and applicable law, the Court will grant the Motion. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court bases its ruling on the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

1. The SEC commenced this action on September 22, 2015. (Doc. No. 1.)

2. Woodley was personally served with summons and complaint on September 29, 2015, and the SEC filed proof of service on October 5, 2015. (Doc. No. 5.)

3. Woodley has never made an appearance in this action.

4. The SEC requested entry of default against Woodley on November 12, 2015, and the Clerk obliged on the same day. (Doc. No. 6, 7.)

5. From at least 2010, Woodley conducted business as an investment adviser through Woodley & Co. Wealth Strategies, an unincorporated sole proprietorship.

1

6.      From December 2010 to December 2012, Woodley was registered as an investment adviser with the state of Texas.

7.      From May 2012 to June 2014, Woodley perpetuated a fraudulent scheme against his clients.

8.      Woodley's fraudulent scheme entailed submitting "Invoice Fee Form for Investment Advisor's Fee" documents to a third-party company, SEI Private Trust Company ("SEI"). SEI would then bill Woodley's clients for the services he purported to perform and would issue quarterly statements to his clients.[1]

9.      Woodley's Fee Invoices described services that he never actually performed, expenses that his clients did not request, and investments for his clients that were never made.

10.     From May 2012 to June 2014, Woodley submitted at least 34 fraudulent Fee Invoices to SEI that resulted in the misappropriation of $147,023.39.

11.     The 34 fraudulent Fee Invoices misappropriated money from ten unique clients.

12.     When a client grew suspicious about Woodley's charges, Woodley responded first with a false explanation and then by cutting off communication altogether.

13.     Woodley's current occupation and financial condition are not known.

II.     **APPLICABLE LAW**

"The Investment Advisers Act of 1940 was the last in a series of Acts designed to eliminate certain abuses in the securities industry, abuses which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's." *S.E.C. v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 187 (1963). The Advisers Act's purpose is "to impose fiduciary standards on investment advisers." *Steadman v. S.E.C.*, 603 F.2d 1126, 1134 (5th Cir.

---

[1] No wrongdoing by SEI has been alleged or found in the present action.

1979). The Act defines "investment advisers" to include "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." 15 U.S.C. § 80b-2(11).

Among other prohibitions, the Act makes it unlawful for investment advisers "to employ any device, scheme, or artifice to defraud any client or prospective client" or "to engage in any transaction, practice, or course of business, which operates as a fraud or deceit upon any client or prospective client." *Id.* § 80b-6(1), (2). A showing of scienter is not required for the latter prohibition, but it is required for the former. *Steadman*, 603 F.2d at 1134. Construing Section 17 of the Securities Act of 1933, which predated and influenced the Advisers Act, the Supreme Court ruled that scienter entailed "intent to deceive, manipulate, or defraud," and was more than mere negligence. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 215 (1976). The Fifth Circuit has adopted that standard for the Advisers Act. *Steadman*, 603 F.2d at 1130, 1134.

## III.  CONCLUSIONS OF LAW

   a. **Liability**

"It is universally understood that a default operates as a deemed admission of liability." *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992). By failing to appear and earning an entry of default, Woodley has admitted to the foregoing facts and the following liability.

The SEC's allegations, accepted as true due to Woodley's nonappearance, establish that he was an investment adviser for purposes of the Act. He was registered as an investment adviser with the state when his violations began, and he held himself out as one to clients. His ostensibly

3

legitimate business included advising his clients "as to the advisability of investing in, purchasing, or selling securities," per 15 U.S.C. § 80b-2(11).

The SEC has established that Woodley violated Subsections 1 and 2 of 15 U.S.C. § 80b-6. His fraudulent Fee Invoices constituted a "device, scheme, or artifice" to defraud his clients within the meaning of Subsection 1. His fraudulent billing likewise constituted a "transaction, practice, or course of conduct" that operated as a fraud upon his clients within the meaning of Subsection 2.

The SEC's showing is sufficient to conclude that Woodley engaged in his misconduct with scienter. He submitted inaccurate bills repeatedly, far too often for it to be accident or mistake. He was challenged by a suspicious client and responded with a false story. Pressed further, he cut off communication altogether. This course of conduct suffices to show that Woodley employed his "device, scheme, or artifice" intentionally to defraud his clients.

b. **Permanent Injunction**

Under the Advisers Act, the SEC can seek an injunction against a person who "has engaged, is engaged, or is about to engage in any act or practice constituting a violation" of the Act. 15 U.S.C. § 80b-9(d). Upon an adequate showing, an injunction "shall be granted without bond." *Id.*

"A permanent injunction is appropriate only if a defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions." *S.E.C. v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (quotation omitted). "In deciding this issue, the court must consider the (1) egregiousness of the defendant's conduct, (2) isolated or recurrent nature of the violation, (3) degree of scienter, (4) sincerity of the defendant's recognition of his transgression, and (5) likelihood of the defendant's job providing opportunities for future violations." *Id.* (quotation omitted).

The SEC's allegations establish conduct that is fairly egregious, recurrent over a period of two years, and intentional, given its frequency and duration. Woodley's confrontation with his suspicious client indicates that he did not sincerely express recognition that his conduct was wrong, as does his failure to make an appearance in this Court. Nothing in the record equips the Court to determine the likelihood that Woodley's job will provide opportunities for future violations.

Despite the lack of information about Woodley's current occupation, the course of conduct established by the SEC lasted long enough and was brazen enough on its own to establish the requisite likelihood of future transgressions. Whatever Woodley's current occupation, these other factors weigh sufficiently heavily in favor of granting the injunction. Moreover, there are minimal equities weighing against it. The injunction requested by the SEC simply restrains him from future violations of the Advisers Act. It does not preclude Woodley from working as an investment adviser or in financial services generally; he retains the option of pursuing a lawful career in these fields. Accordingly, a permanent injunction against Woodley is warranted.

    c. **Disgorgement**

The SEC seeks an order against Woodley requiring him to disgorge the sum that he fraudulently billed to his clients. The Court has the power to order disgorgement, though the power "extends only to the amount with interest by which the defendant profited from his wrongdoing." *S.E.C. v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) (quotation omitted). "The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain." *Id.* "In actions brought by the SEC involving a securities violation, disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 413 (5th Cir. 2007).

The SEC has established that Woodley fraudulently obtained $147,023.39 from his clients. This is the sum Woodley shall be ordered to disgorge.

   d. **Prejudgment Interest**

Courts may add prejudgment interest to a defendant's disgorgement amount. *See S.E.C. v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). "It comports with the fundamental notions of fairness to award prejudgment interest," because defendants' ill-gotten gains are akin to interest-free loans until they have disgorged the sums. *S.E.C. v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1090 (D.N.J. 1996). The rate applied by the IRS in cases of underpaid federal income tax, 26 U.S.C. § 6621(a)(2), is appropriate for calculating prejudgment interest in an enforcement action under the Advisers Act. That rate of interest "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from the fraud." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996).

Because Woodley enjoyed the benefit of its clients' misappropriated funds for years, it is appropriate for him to pay prejudgment interest. Based on a disgorgement amount of $147,023.39 and the application of the IRS underpayment rate from May 2014 up to the present, Woodley shall be ordered to pay $22,549.47 in prejudgment interest.

   e. **Civil Penalty**

The Advisers Act authorizes the imposition of a further civil penalty according to a three-tiered structure, with penalties increasing as conduct worsens. 15 U.S.C. § 80b-9(e)(2). The first tier applies to violations generally. *Id.* § 80b-9(e)(2)(A).The second applies to violations that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* § 80b-9(e)(2)(B). The third applies to violations meeting the second-tier standard that also "resulted in substantial losses or created a significant risk of substantial losses

to other persons." *Id.* § 80b-9(e)(2)(C). At each tier, the penalty is limited to the greater of the defendant's gross pecuniary gain or a certain sum for each violation. This certain sum increases markedly from one tier to the next and is increased further to adjust for inflation. *See* 17 C.F.R. § 201.1001(a). The Court is to determine the appropriate penalty "in light of the facts and circumstances." *Id.* § 80b-9(e)(2)(A).

The SEC has established that Woodley's conduct warrants a third-tier penalty. His violations of the Advisers Act involved fraud, deceit, and manipulation toward his clients. At just under $15,000 per client on average, Woodley's violations resulted in less substantial losses than violations triggering third-tier penalties in recent cases. *See, e.g.*, *S.E.C. v. Guzman*, 2018 WL 229535 (W.D.N.C. May 18, 2018) ($2.1 million); *S.E.C. v. Sample*, 2017 WL 5569873 (N.D. Tex. Nov. 20, 2017) ($919,875). It may nevertheless be said that Woodley's conduct caused "substantial losses," in that $15,000 may be quite substantial for some, and that his conduct "created a significant risk of substantial losses," in that he may have defrauded his clients to a greater extent had one client not grown suspicious.

Once courts determine the penalty tier, they are afforded considerable discretion to choose a penalty amount. As noted, the maximum amount is the greater of Woodley's gross pecuniary gain or of a statutory maximum sum per violation. That statutory maximum is $150,000 for violations committed before March 5, 2013 and $160,000 for violations committed thereafter. If each of Woodley's Fee Invoices is considered a discrete violation, 34 such violations entail a maximum penalty in excess of $5 million.

When determining a penalty amount, courts generally consider the following factors:

(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted

7

wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*S.E.C. v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615 (W.D. Tex. 2014), *aff'd in part, rev'd in part on other grounds*, 854 F.3d 765 (5th Cir. 2017)). *See also S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319 (S.D.N.Y. 2007); *S.E.C. v. Kane*, 2003 WL 1741293 (S.D.N.Y. Apr. 1, 2003); *S.E.C. v. Credit Bancorp, Ltd.*, 2002 WL 31422602 (S.D.N.Y. Oct. 29, 2002); *S.E.C. v. Coates*, 137 F. Supp. 2d 413, 416 (S.D.N.Y. 2001) (Motley, J.).

The preceding discussion has touched on each of these factors already. In deciding to grant a permanent injunction, the Court noted that Woodley's conduct was egregious, recurrent, and intentional, that he has made no admission of wrongdoing, and that his current occupation and financial condition are not in the record. In selecting a third-tier penalty, the Court determined that Woodley's course of conduct created the risk of substantial losses for his clients. Therefore, a substantial penalty is warranted. Taking note of these factors and of the fact that Woodley's 34 violations harmed ten unique clients, the Court concludes that a penalty of $100,000 for each client harmed by Woodley is proportionate to his wrongdoing. Accordingly, the Court will impose a penalty of $1,000,000.

## IV. CONCLUSION

Plaintiff Securities and Exchange Commission has alleged conduct by Defendant Eldrick E. Woodley that violates the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6. Woodley's failure to appear leads this Court to accept the SEC's allegations as true, entitling the SEC to a default judgment and its requested relief against Woodley. Accordingly, the Motion for Final Judgment by Default is **GRANTED**. A final judgment will issue by separate document pursuant to Rule 58(a) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on the 5th day of July, 2018.

                                            KEITH P. ELLISON
                                            UNITED STATES DISTRICT JUDGE